MEYER *v.* CONFAB CORPORATION.

5-3614                                        393 S. W. 2d 253

Opinion Delivered May 24, 1965.

[Rehearing denied September 20, 1965.]

*Wright, Lindsey, Jennings, Lester & Shults,* for appellant.

*John T. Haskins* and *Neill Bohlinger,* for appellee.

GEORGE ROSE SMITH, J. In December, of 1962 the appellant, Robert M. Meyer, and one of the two appellees, Joseph A. Pascale, executed a written contract by which they became business associates. Pursuant to the contract Meyer invested $38,000 in common stock and debentures issued by the other appellee, Confab Corporation, which was one of several allied companies controlled by Pascale. As of April 1, 1964, the business relationship between Meyer and Pascale came to an end. Under the contract it became the duty of Pascale and Confab to repurchase Meyer's stocks and debentures. The only disputed issue now in the case is the date as of which this repurchase must be made. The chancellor held that Pascale and Confab are not required to repurchase the securities until December 31, 1965. Meyer insists that under the contract the obligation to repurchase arose not later than sixty days after the parties' business association ended.

With one exception—the question of who was at fault in bringing about the dissolution of the parties' association—the facts are not in dispute.

When the parties first negotiated their contract in December, 1962, Pascale controlled three corporations that were to engage in the production of Fourdrinier cloth and wire, which are used in the manufacture of paper from wood pulp. Meyer wanted to engage in that business. The contract recited that Pascale would use his influence in the other two corporations (referred to as National and Lauren) to obtain for Meyer a three-year contract of employment at a salary of $10,000 a year. Meyer, as we have said, was required to invest $38,000 in Confab Corporation. His contract with Pascale contained this pivotal language:

"In the event that the employment of Meyer with National and Lauren is terminated for any reason, Meyer will sell and Pascale and Confab, jointly and/or severally, will agree to purchase the shares of no-par common stock and the debentures which Meyer may own in Confab at such time for a cash consideration equal to the par value of the debentures and a consideration for the stock equal to its adjusted book value . . .

"The said consideration as determined shall be paid as follows:—one-third of the total amount within sixty days after determination and the balance over a period of two years thereafter in equal monthly payments with the right to prepay in whole or in part at any time before maturity."

In January, 1963, National and Lauren executed an agreement with Meyer by which he was employed for the years 1963, 1964, and 1965 at an annual salary of $10,000. Meyer became the manager of both companies and worked in that capacity until the latter part of March, 1964. He then quit his job, tendered his resignation as an officer and director in the two companies, and requested that Pascale and Confab repurchase his common stock and debentures.

On April 7, 1964 National and Lauren brought suit against Meyer for breach of contract, their complaint asking that the matter of the repurchase of the securities be held in suspense until the case was decided. A few days later Meyer sued Pascale and Confab for specific

performance of the repurchase agreement. The two cases were consolidated for trial. At the beginning of the trial National and Lauren took a nonsuit in their case. The other suit was tried on its merits. The chancellor found that it would be "manifestly unfair" to permit Meyer to quit his employment and still require Pascale and Confab to repurchase the securities promptly. Upon that reasoning the chancellor held that the repurchase need not be made until December 31, 1965—the expiration date of Meyer's contract of employment.

In this court the appellees insist that Meyer alone was at fault in leaving his employers, that he does not come into equity with clean hands, and that he is precluded from recovery under the rule that one who is himself in default in the performance of his contract cannot compel performance by the other party. *Boswell* v. *Gillett,* 226 Ark. 935, 295 S. W. 2d 758 (1956); *Haney* v. *Caldwell,* 43 Ark. 184 (1884).

We are unable to agree with the appellees' basic premise, that Meyer alone was at fault. Meyer gave several reasons for his decision to quit, including the fact that he was excluded from participating in matters of policy, the fact that the companies did not produce Fourdrinier cloth and wire as had been planned, and the fact that misrepresentations had been made to a bank that lent money to the companies.

Pascale was the principal witness for the appellees. In a discovery deposition taken before the trial he stated positively that during the fifteen months of Meyer's employment his services were not satisfactory. "We got nothing out of him. We got no sales from him." Pascale went on to say that he had told Meyer "a number of times" that his services were not satisfactory. It is quite apparent that this disparagement of Meyer's work tended to support National and Lauren's suit for breach of contract. That suit, however, was dismissed on the day of trial.

At the trial Pascale's testimony was materially at variance with his discovery deposition. He testified not only that Meyer's services had been satisfactory but also

that he, Pascale, had been "anxious" to keep Meyer on the job. He professed to be perfectly willing for Meyer to resume his duties under the contract of employment. It will be seen, of course, that this testimony tended to establish the appellees' defense to Meyer's suit for specific performance.

Reviewing the evidence *de novo,* we are not impressed by Pascale's testimony. What he said at the trial is so seriously in conflict with his pretrial deposition that one version or the other must be untrue. It is our best judgment that Meyer's decision to give up his employment was acceptable to all concerned, so that it is fair to say that his contract of employment was abrogated by common consent. Hence neither side is in a position to complain of a breach of contract on the part of the other. The agreement between Pascale and Meyer provided, as we have seen, that Pascale and Confab were obligated to repurchase Meyer's stock and debentures in the event that his employment should be terminated "for any reason." In the circumstances we are of the opinion that Meyer is entitled to insist that the securities be repurchased in accordance with the contract; that is, that one third of the purchase money be paid as of June 1, 1964, and the rest in equal monthly installments as of the next two years thereafter.

Reversed and remanded for the entry of a decree consistent with this opinion.

Ward, J. dissents.